LAW OFFICE OF

# Bruno V. Gioffre, Jr., PLLC

111 S RIDGE STREET, SUITE 303
RYE BROOK, NEW YORK 10573

**Bruno V. Gioffre, Jr.**
**Admitted in NY, CT & FL**

TELEPHONE (914) 481-8900
FACSIMILE (914) 481-8905
bruno@bgioffrelaw.com

November 10, 2025

*Via ECF*
Honorable Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  USA v. Thomas Gelardo (EDNY)
     Docket No. 25-314

Dear Judge Reyes:

We represent Defendant Thomas Gelardo in the above-captioned case. Pursuant to 18 U.S.C. § 3145(b), we respectfully write to appeal the October 29, 2025 Order of Magistrate Judge Taryn A. Merkl entering a permanent order of detention as to Mr. Gelardo. Because Mr. Gelardo' proposed bail package is sufficient to reasonably assure the safety of the community and the integrity of these proceedings, the Magistrate Court's decision was contrary to the Bail Reform Act's dictates and should be reversed.

It is our understanding that the government moves for detention based only on dangerousness and risk of obstruction of justice. (*See* Gov. Detention Letter addressed to Your Honor dated October 23, 2025, referred to herein as "Gov't Detention Ltr.") Because Mr. Gelardo poses no flight risk, this memorandum does not focus on this potential ground for detention under the Bail Reform Act.  Still, we note that Mr. Gelardo's personal background poses no risk of flight. He is a lifelong New Yorker and has lived his entire life (age 43) in the Bronx or Westchester County. Mr. Gelardo has lived with his sister and in the same condo complex with his mother and father for the last 15 years.  He helps care for his mother who recently had a triple bypass operation and suffers from Multiple Sclerosis.  Mr. Gelardo has a nine-year-old son, Thomas Jr. whom he shares custody with the child's mother, Victoria Bruce and who relies on Mr. Gelardo for child support.  Ms. Bruce has informed me that not only is Mr. Gelardo a wonderful, loving and very dedicated father, he never misses a doctor appointment, birthday, school event or concert.  They attend church together and Mr. Gelardo has even volunteered as a chaperone for class trips.

He has been gainfully employed in the construction industry for most of his adult life until 2020 when the Covid-19 Pandemic shut down the business Thomas worked for. Since that time Thomas has worked part time for various small construction companies.

For reasons stated herein, he poses neither a flight risk nor danger to any person or the community. We note that his passport was surrendered upon his arrest, and he has no international ties. *See, e.g., United States v. Gallo*, No. 99 CR. 1199 LMM, 2000 WL 269894, at *2 (S.D.N.Y. Mar. 10, 2000) (finding that the government had not met its burden of demonstrating that the defendant was a flight risk, noting the defendant "has strong roots in the community" and "does not have a passport").

## I. The Government Has Failed to Meet Its Burden Under the Bail Reform Act to Require Pretrial Detention of Mr. Gelardo

We respectfully submit that the following proposed combination of conditions of pretrial release are sufficient to reasonably ensure the safety of the community and the integrity of these proceedings:

> (1) $2,000,000.00 personal recognizance bond, co-signed by five financially responsible individuals, and secured by three properties, which possess over $1,500,000 in total equity belonging to Mr. Gelardo's close family members and one lifelong friend, who was Mr. Gelardo's sponsor for his Holy Confirmation;
> (2) Travel restricted to the Southern and Eastern Districts of New York;
> (3) Continued surrender of Mr. Gelardo's passport, and an agreement not to secure new travel documents;
> (4) Associational bars as deemed appropriate by the Court; and
> (5) Supervision by Pretrial Services, as directed.

While the charges against Mr. Gelardo are admittedly serious, they are insufficient to warrant his pretrial detention. Under the Bail Reform Act, this case is one where the presumption of bail applies. The government cannot meet its burden of establishing that there are no "condition, or combination of conditions" that will "reasonably assure" the Court that Mr. Gelardo will not "endanger the safety of any other person or the community," and will not present a "serious risk" that he will "obstruct or attempt to obstruct justice." 18 U.S.C. §§ 3142(c), (f)(2)(B).

The Indictment essentially charges that Mr. Gelardo, an alleged associate of the Bonnano Crime Family, supervised an illegal poker game on Lexington Avenue in Manhattan, along with Co-Defendant Ziliani, an alleged inducted member of the Bonanno Crime Family and received proceeds from the illegal poker games along with Co-Defendant Aiello, an alleged high-ranking member of the Bonanno Crime Family. (Gov't Detention Ltr, p. 9) Based on this claim, the government charges Mr. Gelardo with illegal gambling, wire fraud and money laundering.

It is further claimed that Mr. Gelardo committed a Hobbs Act Extortion, by assaulting John Doe #5, who allegedly owed Co-Defendant Zhen Hu money. (Id. at p.12-

13. However, the government has not proffered any evidence that this alleged assault was committed by Mr. Gelardo to collect a debt.

Although Magistrate Judge Merkl denied Mr. Gelardo bail on October 29, 2025, she previously granted Mr. Gelardo's codefendant Joseph Lanni's bail subject to the following conditions: (1) $500,000 personal recognizance bond secured by two financially responsible co-signers (*See* Min. Entry for October 24, 2025, Proceedings as to Joseph Lanni [Dkt. 147].) The government's detention memorandum contains allegations of Lanni's ties to organized crime: "Lanni is an inducted member of the Gambino crime family and holds a leadership position within the family, which gives him a unique ability to direct others to commit crimes and makes him a particular danger to the community." (Gov't Detention Ltr. at 22.) The government further argued Lanni has demonstrated an inability to comply with pretrial release conditions highlighting that while on pretrial release, in a pending RICO case that he recently pled guilty to, Lanni was in communication with Gambino associates in violation of his pretrial conditions not to communicate with members and associates of LCN. (Id.) The government also argued that Lanni had a history of involvement in attempts to intimidate witnesses and direct involvement in uncharged acts of violence that strongly favors detention. (Id.).

At Mr. Gelardo's detention hearing held on October 29, 2025, Magistrate Judge Merkl denied Mr. Gelardo's $500,000 bond proposal stating that it was a "very close call" given the criminal history and weight of the evidence against Mr. Gelardo. (Gelardo Minutes p. 23). "In evaluating each of these factors as they concern Mr. Gelardo, I do find that the nature and circumstances of the offense charged, to start with that, suggests that the crime charged here is very serious. As the parties know, Mr. Gelardo is charged with wire fraud conspiracy, illegal gambling, money laundering conspiracy, and Hobbs Act extortion, account that carries a presumption that he will -- either a presumption of risk of flight or a danger to the community or both. I note that under multiple of those counts, except for the illegal gambling charge, he's facing a statutory maximum penalty of up to 20 years." (Id. at 25)

With respect to the government's case against Mr. Gelardo, their entire Hobbs Act Extortion charge rests on the uncorroborated word of a cooperating witness, John Doe #5. In the government's detention memo they claim in early November 2022, co-defendant Zhen Hu assaulted John Doe #5, a poker player, for not paying a gambling debt. (Gov't Detention Ltr. at 12) The government cited several text messages of John Doe #5 and Co-Defendant Zhen Hu to support these allegations. They further allege that on an unspecified later date, Co-Defendant Zhen Hu, Co-Defendant Ziliani and Mr. Gelardo demanded John Doe #5 to come outside of 80 Washington Place in Manhattan and when he eventually came outside Mr. Gelardo assaulted John Doe #5. (Id.) To support this allegation of a second assault on John Doe #5, the government cites two self-serving text messages from John Doe #5 to Co-Defendant Zhen Hu sent almost a year later stating, "What you did was cowardly and ridiculous" "And then u sent a bunch of goons to solve your problems". (Id at 12-13)

These text messages are flimsy evidence at best to support their argument that Mr. Gelardo assaulted John Doe #5 in 2022. There are no alleged admissions by Mr. Gelardo. Further the self-serving texts messages send by John Doe #5 almost a year later, don't reference a physical assault or an extortion and don't mention my client's name or specified description. Further, John Doe #5 claims that Co-Defendant Zhen Hu "sent" a bunch of goons, while the allegation described by the government states that Co-Defendant Zhen Hu was present with Mr. Gelardo in front of 80 Washington Place when the alleged assault too place. These stale contradictory text messages draw question into the veracity of the extortion claim against Mr. Gelardo and questions whether John Doe #5 was even recalling the alleged incident that took place at 80 Washington Place.

Putting aside the text messages, even if this Court views the uncorroborated word of John Doe #5 in the light most favorable to the government, the allegation of an isolated assault (one punch) committed by Mr. Gelardo, falls short of a Hobbs Act Extortion. There is no allegation that John Doe owed Mr. Gelardo money and no allegation that the alleged assault was related to a collection of any debt. Therefore, Magistrate Merkl was incorrect to conclude that the weight of the evidence against Mr. Gelardo was substantial. In that regard, the government has failed to demonstrate any direct involvement by Mr. Gelardo in the crimes charged in this case of illegal gambling, wire fraud, money laundering and Hobbs Act Extortion.

It should be further noted that Co-Defendant's Zhen Hu and Co-Defendant Ziliani (an alleged member of LCN) both were released on $500,000.00 bond secured by financially responsible sureties. (Dkt. 147 [Magistrate Merkl] and Dkt. 66 [Magistate Cho] respectively). Further, it is alleged that Co-Defendant Ziliani brandished a firearm in this case and upon information and belief a firearm is alleged to have been recovered from Co-Defendant Ziliani's property at the time of his arrest. In addition, Defendant Minucci who is alleged to have participated in a gun point Hobbs Act robbery in this case, was released on a $3.5 Million Dollar Bail secured by property and sureties (Dkt. 237 [Magistrate Pollack]) despite having been sentenced to fifteen years imprisonment after being convicted in 2006 of hate crime with a baseball bat and while on parole allegedly engaged in illegal gambling in March of 2021. (Gov't Detention Ltr. at 26)

Moreover, it is our understanding that except for Co-Defendant Ruggiero, an alleged member of the Gambino crime family with a long history of committing serious crimes-including witness tampering in service of the criminal enterprise, all remaining defendants have been released on bond with various pre-trial bail conditions.

Turning to Mr. Gelardo's criminal history, Mr. Gelardo at the age of twenty years old in 2002 was convicted of Assault in the 2nd Degree and received one year in the Westchester County Jail. Three years later in 2005, Mr. Gelardo was convicted of Assault in the 2nd Degree and received a sentence of five years probation. In 2008, while on probation, Mr. Gelardo was convicted of Criminal Possession of a Weapon in the Third Degree and was sentenced to two to four years imprisonment. However, since his release in 2011, Mr. Gelardo has had no further convictions other than a Criminal Trespass in the State of New Jersey which resulted in a $125 fine. This matter involved Victoria Bruce

who is the mother of his son, Thomas Jr., and who he now has a very cordial co-parenting relationship with. See Letter from Adam Lustberg, Esq. which explains the New Jersey cases.

In her conclusion, Magistrate Judge Merkl held that "Mr. Gelardo's lack of gainful employment, lack of explained resources suggest that he has been involved in a criminal lifestyle earning tremendous sums of money over the past five years if not stretching further into the past together with others involved in organized crime and the totality of the circumstances before me with the proffered bail package as offered today, Mr. Gioffre, the application for bail is denied." (Gelardo Minutes p. 31-32)

While we understand Magistrate Judge Merkl's concern regarding Mr. Gelardo's lack of steady income for the last five years coupled with the amount of large amount of money and jewelry seized at Mr. Gelardo's residence at the time of his arrest, we submit that he had worked most of his adult life for various reputable construction companies including but not limited to Canal Asphalt in Manhattan for the 731 Union and Loreno Masonry. Since Covid-19 Pandemic he has worked part time for various local construction companies. In that regard, Mr. Gelardo if released on bail, has a full-time job waiting for him with Carben Construction in Westchester County. See attached letter from Carben Construction CEO Ronni Browning who is also one of Mr. Gelardo's sureties.

With respect to the money and jewelry seized, we submit that most of this property was accumulated prior to the time frame of the acts alleged against Mr. Gelardo in the instant Indictment and have nothing to do with this case. Mr. Gelardo believes he will be able to establish this fact if released and is able to retrieve business records and hire a forensic accountant to review said records.

Given the weakness of the government's proffer and the substantial bail package Mr. Gelardo proposes here, which both restricts his liberty and ensures significant moral suasion over him, Mr. Gelardo's continued detention is anathema to the Bail Reform Act's directives and its presumption of pre-trial release. The law is clear, "it is only a limited group of offenders who should be denied bail pending trial." *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (quotation marks and citations omitted); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (pretrial detention is a drastic measure, narrowly reserved for "extreme case[s]"); *United States v. Scarpa*, 815 F. Supp. 88, 91 (E.D.N.Y. 1993) (pretrial detention "has been and should remain the exceptional practice") (emphasis supplied). Mr. Gelardo is not one of them. This Court should order his pretrial release on the proposed substantial bail conditions presented here.

## II.    Legal Standard

The Bail Reform Act requires pretrial release on a personal recognizance bond "unless the [Court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). In making its bail determination, the Court should consider the following factors: "(1) the nature and circumstances of the offense charged . . .; (2) the

weight of the evidence against the person; (3) the history and characteristics of the person . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* at § 3142(g).

Even if the Court finds that release on the defendant's personal recognizance creates a danger to the community, or a risk of obstruction of justice or flight, the law still favors pretrial release "subject to the least restrictive further condition, or combination of conditions, that [the Court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B); *accord United States v. Zherka*, 592 F. App'x 35, 36 (2d Cir. 2015) (quoting *United States v. Sabhnani,* 493 F.3d 63, 75 [2d Cir. 2007]).

When deciding an issue of pretrial release, "the court should bear in mind that it is only a limited group of offenders who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987). Under 18 U.S.C. § 3145(b), this Court's review of the Magistrate Judge's detention order is *de novo. United States v. Molina*, No. 11 CR. 528 JFK, 2012 WL 3564013, at *3 (S.D.N.Y. Aug. 16, 2012) ("A district court having original jurisdiction over a charged offense must review a magistrate judge's detention order *de novo* and do so promptly."). Thus, in deciding Mr. Gelardo's bail application, this Court should "exercise its independent judgment and not defer to the magistrate." *United States v. Paulino*, 335 F. Supp. 3d 600, 609 (S.D.N.Y. 2018) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)).

## III.    A Presumption of Release Applies in Mr. Gelardo's Case

The government argues that Mr. Gelardo's close affiliation with organized crime and propensity for violence are a basis for detention (Detention Ltr. at 19.) The government's argument largely boils down to the claim that it's proffer of a defendant's alleged association with a criminal enterprise, alone is sufficient to grant pretrial detention. The Second Circuit already has rejected the government's argument, presuming a defendant's dangerousness based solely on alleged ties to organized crime. *United States v. Persico*, 376 F. App'x 155, 156 (2d Cir. 2010) (reversing the district court's detention decision under a "clear error" standard of review, where the lower court applied a presumption of the defendant's dangerousness based on his alleged connections to the Colombo crime family, and allegations that "he had the ability to order others to use violence," and, in dicta, finding that it would be "close call" on clearly erroneous review to find the government met its burden for detention when it presented no specific evidence that the charged defendant committed acts of violence or directed them). In this case, like *Persico*, Mr. Gelardo is not charged with any offenses that create a rebuttable presumption of detention. Instead, there is a statutory presumption that there are conditions of release available to ameliorate any risks Mr. Gelardo may pose. *See* 18 U.S.C. § 3142(e)(2), (3).

Even defendant who were alleged members of organized crime have repeatedly been granted pretrial release under circumstances more severe than Mr. Gelardo's case. The recent case of *United States v. Esposito* is instructive. 309 F. Supp. 3d 24 (S.D.N.Y.),

*aff'd*, 749 F. App'x 20 (2d Cir. 2018), and *reconsideration denied*, 354 F. Supp. 3d 354 (S.D.N.Y. 2019). Esposito, who allegedly held a "'position of significant influence' in the Genovese Family," was charged "with a racketeering conspiracy allegedly perpetrated to protect the Genovese Family's power, to intimidate its victims, and to enrich its members. In furtherance of the conspiracy, Defendants allegedly committed acts of extortion, solicited unlawful kickback payments, committed fraud, and used threats of physical violence and economic harm." *Id.* at 26. Significantly, "two firearms, a pair of 'brass knuckles,' and 'a large amount of cash' were found in Esposito's home at the time of his arrest." *Id.* In moving for Esposito's detention, the government made arguments similar and stronger to those it makes here: that "Esposito poses a significant danger to the community and a risk of flight because he is a high-ranking member of the Genovese Family who is charged with orchestrating threats of violence with a wide network of criminal associates and controlling significant cash assets for the Genovese Family." *Id.* at 27. Still, the *Esposito* court found that there were conditions allowing Esposito's release, explaining that it was "not persuaded that Esposito poses such a grave danger to the community that he must be detained pending trial." *Id.* at 31. In granting Esposito pre-trial release, the court found that "[a]lthough there are serious allegations of threats of violence in this case, there do not appear to be any allegations that Esposito actually carried out any acts of violence." *Id.* The allegations against Mr. Gelardo are substantially less severe. There is no evidence that Mr. Gelardo committed any act of violence to collect a debt. The only allegation relevant to Mr. Gelardo's purported dangerousness is that he allegedly assaulted John Doe #5 in an isolated incident with no physical injury alleged.

In another similar case, *United States v. Cammarano*, 18-cr-15 (AKH), Bail Hearing Tr. [Dkt. 65] (S.D.N.Y. Jan. 18, 2018), the court likewise released the defendant under the Bail Reform Act, although the government maintained that he "presents a danger to the community," and "is the acting boss of the Bonnano organized crime family." *Id.* at 53:18-20. Unlike Mr. Gelardo, Cammarano was alleged to have longstanding ties to organized crime, and had a prior organized crime conviction for racketeering. In the government's words, Cammarano previously "pled [guilty] to loan-sharking in a count that alleged that he was at all times an associate, soldier and acting captain in the Bonnano organized crime family." *Id.* at 53:25-54:5. Still, the court ultimately granted Mr. Cammarano pretrial release with a $4 million secured bond, and home detention. *See United States v. Cammarano*, 18-cr-15 (AKH), Appearance Bond [Dkt. 75] (S.D.N.Y. Feb. 7, 2018).

The court also released the defendants in *United States v. Eppolito*, No. 05-CR-192, 2005 WL 1607192 (E.D.N.Y. July 11, 2005), who were charged "with multiple murders while they were policemen acting in aid of Mafia members' criminal activities in the 1980s and early 1990s," as well as more recent acts of "illegal drug dealing." *Id.* at *1. Although recognizing that those charges, which carried a "maximum sentence [of] life imprisonment," "could hardly be more serious," the *Eppolito* court granted the defendants "bail with strict conditions of control to protect the public." *Id.* Indeed, a litany of cases grant bail to defendants alleged to have significant stature in organized crime families. *See United States v. Michael J. Persico*, 10-cr-147 [Dkt. 108] (E.D.N.Y. May 13, 2010) (granting pretrial release to son of life-imprisoned mob boss, an allegedly powerful

Colombo associate charged with racketeering murder); *United States v. Modica*, 09-cr-1243 (S.D.N.Y. Apr. 21, 2010) (granting pretrial release to alleged powerful Gambino soldier facing racketeering charges including double murder, jury tampering, assault and extortion); *United States v. Agate*, 08-cr-076 (E.D.N.Y. 2008) (granting pretrial release to alleged high ranking gangsters charged with violence); *United States v. Cutaia*, 08-cr-097 (E.D.N.Y. 2008) (same); *United States v. Spero*, 99-cr-520 [Dkt. 107] (E.D.N.Y. June 24, 1999) (granting pretrial release to alleged acting Bonanno boss facing four murder charges); *United States v. John A. Gotti*, 98-cr-042 [Dkt. 249] (S.D.N.Y. Sept. 16, 1998) (granting pretrial release to son of life-imprisoned mob boss, allegedly a Gambino acting boss); *United States v. Orena*, 93-cr-1366 [Dkt. 26] (E.D.N.Y. Dec. 29, 1993) (granting pretrial release to son of Colombo acting boss).

The instant case carries a presumption favoring Mr. Gelardo's release. Neither the government's allegations of organized crime connections, nor the caselaw it cites in support of detention overcome that presumption. *See also United States v. Gambino*, 809 F. Supp. 1048, 1050 (S.D.N.Y. 1992), *aff'd*, 17 F.3d 572 (2d Cir. 1994) (discussing the significant bail packages securing the pretrial release of Joseph Gambino and John Gambino, who were captains and lieutenants in the Gambino crime family).

## IV.    The Government's Thin Allegations of Extortion Are Insufficient to Meet Its Heavy Burden of Demonstrating Mr. Gelardo's Dangerousness by Clear and Convincing Evidence

[T]o obtain an order of pretrial detention on the basis of dangerousness, the Government must demonstrate by clear and convincing evidence that a defendant poses a risk of danger to others, and that no conditions "will reasonably assure . . . the safety of the community." Clear and convincing evidence "means something more than 'preponderance of the evidence,' and something less than 'beyond a reasonable doubt.'" Put another way, a detention order must draw upon evidence that provides "a high degree of certainty" as to danger. *Paulino*, 335 F. Supp. at 609 (quoting *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985); *accord United States v. Gallo*, No. 99 CR. 1199 LMM, 2000 WL 269894, at *1 (S.D.N.Y. Mar. 10, 2000) ("To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." (quotation marks and citations omitted)). "This quite meaningful showing will only apply to a limited number of individuals." *Paulino*, 335 F. Supp. at 603. The government argues that Mr. Gelardo is a Bonanno Family associate. But the government cannot carry its burden of demonstrating dangerousness based on mere allegations that Mr. Gelardo has connections to organized crime. *See supra* § III; *accord United States v. Collazo*, No. 90 CRIM. 0824 (LMM), 1991 WL 89637, at *3 (S.D.N.Y. May 21, 1991) (although there was a presumption of defendant's dangerousness, government had not met its burden by "stat[ing] that Collazo is the head of the organization that sold drugs at 1625–1631 Fulton Avenue," in the "absence of any evidence or proffer by the government that Collazo—as distinguished from 'Collazo's organization'—has, in the past, used violence against others.").

The government's other allegations against Mr. Gelardo are similarly insufficient—the evidence of Gelardo's dangerousness is, at best, thin. As an initial matter, because he is presumed innocent, contentions stemming solely from the nature of the crimes alleged in the Indictment are the "the least important of the various factors" to be considered under the statute, and should not be "afford[ed] . . . undue weight." *Paulino*, 335 F. Supp. at 613 ("To avoid punishment for a crime for which a defendant has not yet been shown to have committed, many courts have suggested that the weight of the evidence is the least important of the various factors. Thus, the Court is cautious [not] to afford this factor undue weight.") (quotation marks and citations omitted).

Furthermore, the charges themselves undermine the government's contention that Mr. Gelardo presents a danger. As stated earlier, the Indictment essentially depicts crimes of illegal gambling, wire fraud and money laundering, economic crimes that would not, without more, permit the government to seek detention. *See* 18 U.S.C. § 3142(f). Defendants charged with far more extensive financial crimes are routinely released on bail. *See, e.g., United States v. Webb*, No. 15-cr-252 (PKC) 35] (E.D.N.Y. July 18, 2015) (defendant was released on bond with the condition of strict house arrest in international FIFA bribery case); *United States v. Seng*, No. 15-cr-706 (VSB) [Dkt. 35] (S.D.N.Y. Oct. 16, 2015) (defendant, arrested for large-scale bribery of a United Nations official while boarding his private jet to leave the country, released on house arrest); *Madoff*, 586 F. Supp. 2d at 249 (defendant, who was facing a life sentence for one of the largest fraud cases in the nation's history was released on restrictive conditions of house arrest); *United States v. Dreier*, 596 F. Supp. 2d 831-32 (S.D.N.Y. 2009) (defendant charged with $400 million fraud, who the court characterized as "not only a master of deceit and a doyen of dishonesty but the kind of person who, under stress, may resort to desperate measures," was released on bail); *United States v. Brooks*, No. 06-cr-550 (JS) [Dkt. 75] (E.D.N.Y. Jan 3, 2008) (defendant, whose fraud exceeded $140 million, released on bail).

Far from demonstrating Mr. Gelardo's involvement in "violent criminal activities", the government presents only a single isolated incident allegedly involving Mr. Gelardo that contains barely a whiff of dangerousness. And those allegations are insufficient to meet the government's burden; as to Mr. Gelardo, they make little sense. As previously stated, even if this Court views the uncorroborated word of John Doe #5 in the light most favorable to the government, the allegation of an isolated assault (one punch) committed by Mr. Gelardo, falls short of a Hobbs Act Extortion. There is no allegation that John Doe owed Mr. Gelardo money and no proof that the alleged assault was related to a collection of any debt. Such meager representations cannot support a finding, by clear and convincing evidence, of Mr. Gelardo's dangerousness.

Finally, the government points to Mr. Gelardo's prior violent felony convictions which occurred twenty-three (23), twenty (20) and seventeen (17) years ago respectively, as evidence of his dangerousness. The first two were bar fights when Mr. Gelardo was twenty (20) and twenty-three (23) years old. It should be noted that in all three cases, Mr. Gelardo was released on bail, followed all his bail conditions and never once missed a court appearance. Defendants with more significant criminal histories, including those with convictions for racketeering or violence, are frequently released on bail. *See, e.g., Paulino*,

335 F. Supp. 3d at 613–14 (discussing the defendant's several prior convictions, including one that was "entirely consistent with his behavior in the instant offense," prior to ordering his pre-trial release); *Cammarano*, 18-cr-15 (AKH), Bail Hearing Tr. at 53:25-54:5 (the defendant, who had a prior racketeering conviction for "loan-sharking," which included allegations "that he was at all times an associate, soldier and acting captain in the Bonanno organized crime family," released on bail); *Collazo*, 1991 WL 89637, at *3 (in a presumption case, defendant who "ha[d] twice been convicted for illegal possession of a firearm," was released on bail). Significantly, in his 2008 gun possession case, Mr. Gelardo was released on parole in 2011 and complied with all of his parole conditions. Accordingly, because the government has failed to establish Mr. Gelardo's dangerousness by clear and convincing evidence, he should be granted pretrial release.

## V.    There is Little Risk that Mr. Gelardo will Attempt to Obstruct Justice Upon Release

The government mistakenly argues that given Mr. Gelardo's close affiliation with organized crime and stated propensity for violence, Mr. Gelardo will pose a serious risk that he will obstruct justice if released on bail without any basis in fact. (Gov't Detention Ltr. at 19) While the government must only prove that Mr. Gelardo poses a risk of obstruction by a preponderance, *see United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). That general statement of "close affiliation to organized crime", without more, is insufficient to warrant Mr. Gelardo's detention. *See United States v. Gallo*, 653 F. Supp. 320, 324 (E.D.N.Y. 1986) (defendants who indicted on RICO charges and had alleged connections to organized crime, were released on bail although they "were found to constitute a danger to a potential witness").

## VI.    Mr. Gelardo's Substantial Bail Package Ameliorates Any Risks

Should the Court find that Mr. Gelardo poses some risk of obstruction or danger, the substantial bail package proposed more than reasonably ameliorates any such risk. Specifically, Mr. Gelardo proposes a $2 million bond, co-signed by five financially responsible people, and secured by three properties owned by Mr. Gelardo's closest family and friends. These properties retain powerful moral suasion over Mr. Gelardo during the litigation of this matter as it is the home of his sister, lifelong friend and cousin which any sudden upheaval regarding these properties would cause them severe hardship.  This substantial bail package, risking the family homes of Mr. Gelardo's' immediate family, his sister Monica, as well as the homes of his cousin and lifelong friend, presents considerable moral suasion for Mr. Gelardo's compliance with his conditions of release. *See, e.g., United States v. Batista*, 163 F. Supp. 2d 222, 224 (S.D.N.Y. 2001) ("Appropriate factors to consider when weighing whether a proposed suretor exercises moral suasion vary from case to case, but may include the strength of the tie between the suretor and defendant (i.e. family or close friend, close or estranged), the defendant's roots in the community, and the regularity of contact between suretor and defendant"); *United States v. Sierra,* No. 99 CR. 962, 1999 WL 1206703 (S.D.N.Y. Dec. 16, 1999) (in a presumption case, granting bail based, in large part, on the moral suasion exerted by friends and family acting as bail sureties).

## VI.  Conclusion

The government simply has not carried its burden of demonstrating that the proposed combination of conditions presented here are insufficient to ameliorate any risks posed by Mr. Gelardo's pretrial release. This Court should, therefore, order Mr. Gelardo's release on these substantial conditions. *See* 18 U.S.C. § 3142(c) (the "judicial officer *shall* order the pretrial release of the person -- . . . (B) subject to the *least restrictive* further condition, or combination of conditions, that such judicial officer determines will reasonably assure . . . the safety of any other person and the community...") (emphasis added).

Respectfully,

Law Office of Bruno V. Gioffre, Jr., PLLC

Bruno V. Gioffre, Jr., Esq.

# LUSTBERG LAW OFFICES, LLC
## ONE UNIVERSITY PLAZA, SUITE 212
### HACKENSACK, N.J. 07601
www.lustberglaw.com

ADAM M. LUSTBERG, ESQ.*
alustberg@lustberglaw.com

T (201) 880-5311
F (201) 820-0461

*Certified by the Supreme Court of New
 Jersey as a Criminal Trial Attorney

November 4, 2025

VIA ELECTRONIC MAIL

Hon. Ramon E. Reyes, Jr.
United States District Court
225 Cadman Plaza East
Brooklyn, N.Y. 11201

  **Re:** **United States of America v. Thomas Gelardo**

Dear Judge Reyes:

  My name is Adam M. Lustberg and I am attorney in Hackensack, New Jersey. Several years ago, I represented Thomas Gelardo in connection with a number of matters and, to the extent that his criminal history is relevant to an application presently before Your Honor, I write to provide context to the Court.

  On July 19, 2019, Mr. Gelardo was sentenced to two (2) concurrent terms of probation on Complaint No. W-2019-201-2015 and Complaint No. W-2019-201-2015. I did not represent Mr. Gelardo in connection with these complaints.

  In October 2019, Mr. Gelardo retained me to represent him in connection with two (2) Violations of Probation (VOP) that were pending in Bergen County, New Jersey, and alleged violations of the terms of probation that were imposed on Complaint No. W-2019-201-2015 and Complaint No. W-2019-201-2015, as set forth above. My file reflects that these VOP's were filed on July 31, 2019, on the basis of a July 26, 2019 arrest in Englewood, New Jersey for an alleged violation of N.J.S.A. 2C:33-4 (*Harassment*) charged on Complaint No. W-2019-295-02154. This complaint contained no allegations of physical violence. In New Jersey, a violation of N.J.S.A. 2C:33-4 is considered a Petty Disorderly Persons offense and, by statute, is not considered a criminal offense. The July, 26, 2019 arrest also resulted in a charge for an alleged violation of N.J.S.A. 2C:29-9(b)(1) (*Contempt – Violation of Domestic Violence Restraining Order*)In New Jersey, a violation of N.J.S.A. 2C:29-9(b)(1) is considered a Disorderly Persons Offense and, by statute, is not considered a criminal offense. On December 10, 2020, both of the referenced VOP's were withdrawn by the Bergen County Probation Department when Complaint No. W-2019-295-02154, the Englewood, New Jersey complaint that was the basis for the VOP's, was dismissed.

AML/cc
cc:

On January 29, 2020, I filed a Motion for Early Termination of Probation in the Bergen County Superior Court seeking termination of the terms of probation referenced above. On March 12, 2020, my Motion for Early Termination of Probation was granted by Hon. James X. Sattely, J.S.C., with the consent of the Bergen County Prosecutors Office, in part because Mr. Gelardo was in full compliance with the terms and conditions of his supervision and because the only alleged violations were ultimately withdrawn when the predicate complaints were dismissed.

In June of 2020, Mr. Gelardo retained me to represent him in connection with a Temporary Restraining Order (TRO), venued in Bergen County, New Jersey, that had been obtained by a woman with whom he'd previously been in a romantic relationship with. This TRO was predicated on an allegation of harassment and on an allegation of physical contact where the plaintiff, by her own admission within the TRO itself, "did not sustain any injuries." This TRO was ultimately dismissed by Hon. Terry Bottinelli, J.S.C., following a full trial on the merits, because the plaintiff failed to prove by a preponderance of the evidence that an act of domestic violence occurred. This TRO did not contain allegations of physical violence resulting in injury and, ultimately, what allegations were made were not proven.

Thank you in advance for your consideration of this submission. Please do not hesitate to contact me directly if I can be of further assistance to the Court or to counsel.

Respectfully Submitted,
LUSTBERG LAW OFFICES, LLC

By: _____
ADAM M. LUSTBERG

cc:    Bruno Gioffre, Esq.

AML/cc
cc:



**CARBEN**
C O N S T R U C T I O N

7 Rye Ridge Plaza #1003 Rye Brook, N.Y. 10573
Cell- (917) 533-2536      Office- (914) 500-4133
E Mail- RonniB@CarbenNYC.com
www.CarbenNYC.net

November 6, 2025

Honorable Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>USA v. Thomas Gelardo (EDNY)</u>
     <u>Docket No. 25-314</u>

Dear Judge Reyes:

  I am the owner of Carben Construction, a Westchester County based construction company that has been in business for over seven (7) years. In addition, I have known Mr. Gelardo for over twenty-five (25) years. I am writing this letter to inform the Court that upon his release from federal custody, Thomas will be working for my company as a laborer on a full-time basis.

  Thank you for your attention to this matter. I am happy to provide additional information regarding this should the Court require.

     Sincerely,

     Carben Construction

     Ronni Browning, CEO